UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| KALE J. HARPER, | ) | No. ED CV 11-1378-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 2, 2011, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 3, 2011, and October 25, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on October 17, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on December 4, 1968. [Administrative Record ("AR") at 51.] He has a high school education [AR at 161] and past relevant work experience as an encoder, a store stocker, a warehouse worker, a call center customer service representative, a telemarketer, a hotel front desk worker, and an appointment setter. [AR at 163-70.]

On February 23, 2007, plaintiff protectively filed his application for Supplemental Security Income payments and filed his application for Disability Insurance Benefits, alleging that he has been unable to work since December 19, 2005, due to tendinitis in both shoulders, problems with his back, and problems with his feet. [AR at 51-54, 144-48, 155-62.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 55-66.] A hearing was held on December 4, 2008, at which time plaintiff appeared with counsel, and during which a medical expert and a vocational expert testified. [Supplemental Administrative Record ("SAR") at 369-89.] A supplemental hearing was held on January 27, 2009, at which time plaintiff appeared with counsel and testified on his own behalf. A different vocational expert also testified. [AR at 33-50.] On May 19, 2009, the ALJ determined that plaintiff was not disabled. [AR at 23-32.] On January 10, 2011, the Appeals Council denied plaintiff's request for review, but later vacated that decision in order to consider additional information. [AR at 1, 10-14, 17.] On April 28, 2011, the Appeals Council again denied plaintiff's request for review. [AR at 1-3.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date, December 19, 2005. [AR at 25.][1] At step two, the ALJ concluded that plaintiff has the severe combination of the following impairments: bilateral shoulder tendinitis, back and foot problems. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 28.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[3] with the

---

[1]  The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2011. [AR at 25.]

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

limitations that plaintiff: can stand or walk for four hours in an eight-hour day; can sit for six hours in an eight-hour day; can lift and carry twenty pounds occasionally and ten pounds frequently; can push and pull twenty pounds occasionally and ten pounds frequently; can occasionally bend, stoop, or crouch; and "should avoid exposure to concentrated vibration." [AR at 29.] At step four, the ALJ concluded that plaintiff is capable of performing his past relevant work as a credit clerk, a telephone solicitor, and an appointment clerk. [AR at 31.] Accordingly, the ALJ determined that plaintiff has not been under a disability from December 19, 2005, to May 19, 2009, the date of the decision. [AR at 31-32.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ's RFC assessment is not supported by substantial evidence, and (2) the ALJ failed to properly evaluate plaintiff's credibility. [Joint Stipulation ("JS") at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends that the ALJ failed to properly evaluate his subjective symptom testimony. [JS at 13-18, 22-23.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons

1 for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

At the administrative hearing, plaintiff testified that he cannot work because he is "constantly in pain." [AR at 39.] He stated that he has pain in his feet, where he "ha[s] chronic arthritis in [his] toes." [Id.] He testified that after his big toe on his left foot was "cut off ... some time ago," he developed a "fung[al] infection in [his] system ... [which] has now traveled throughout [his] body and is now located on the right side so both [his] feet" are in pain. [Id.] He testified that he also experiences pain in both shoulders, where he has tendinitis. [Id.] He stated that he has two bulging discs in his lower back, one of which "is pushing up against [his] spinal cord." [Id.] As a result, whenever he "turn[s] wrong," his legs grow painful, which feels like numbness and burning "to the point where [his] legs don't work [and he] can't walk." [Id.] Plaintiff also stated that he sometimes feels the pain in his legs when he is sitting, and can only sit for approximately 20 minutes before needing to stand or lie down. [AR at 39-40.] He represented that he spends most of the day lying down because that is "the most comfortable position" for him. [AR at 40.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." [AR at 30.] The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]." [Id.] Thus, at step two, as the record

contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ rejected plaintiff's credibility because: (1) he found plaintiff's treatment to be conservative; (2) he determined that plaintiff "has been repeatedly non-compliant with prescribed mental health treatment"; (3) a workers' compensation physician released plaintiff to work within 12 months of plaintiff's initial presentation for treatment in the context of a workers' compensation claim; and (4) he found there to be a lack of medical evidence. [See AR at 30.]

The ALJ's reasons for discounting plaintiff's credibility are not clear and convincing. First, in rejecting plaintiff's credibility on the basis of conservative treatment, the ALJ states that plaintiff's "[t]reatment has been of a conservative nature and [is] not commensurate with the degree of limitation alleged"; that "[t]he records disclose no debilitating side effects from prescribed treatment"; and that plaintiff "received conservative medical care for athlete's foot and a fungal infection of his nails." [AR at 30.] As an initial matter, it is not clear to the Court how the degree of plaintiff's *side effects* from his prescribed treatment -- as opposed to the efficacy of that treatment -- is relevant to whether plaintiff's testimony concerning his pain and other limitations is credible. Indeed, plaintiff did not testify that his *side effects* from treatment prevent him from being able to work. [See AR at 38-49.] As to the ALJ's characterization of plaintiff's treatment as "conservative," the record reflects that for plaintiff's foot problems, plaintiff's treating physician diagnosed him with athlete's foot and onychomycosis,[5] and prescribed him with medication. [AR at 322, 324, 326.] For his shoulder and back problems, plaintiff was consistently prescribed

---

[4] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

[5] Onychomycosis is a "[f]ungal nail infection." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002306/.

7

1  Vicodin (which contains narcotics[6]) between January 30, 2006, and June 28, 2006, and was still
2  taking Vicodin as of November 2006 and January 2008 [AR at 258, 315-16, 319-29]; he received
3  an injection for his pain on at least one occasion [AR at 291, 328]; and his treating physician
4  referred him for a neurosurgery evaluation on June 28, 2006.  [AR at 318.]  The ALJ pointed to
5  nothing in the record to show that any specific treatment in addition to the treatment plaintiff was
6  receiving is a standard method for treating his shoulder, back, and foot problems.  [See AR at 30-
7  31.]  Moreover, insofar as the ALJ concluded that plaintiff's treatment for his shoulder and back
8  pain was "conservative" because he has not pursued surgery, "it is improper to deny benefits on
9  the basis of declined surgery, when surgery is only a suggested rather than a prescribed course
10 of treatment."  Aguirre v. Astrue, 2009 WL 3346741, at *5 (C.D. Cal. Oct. 14, 2009); Cooley v.
11 Astrue, 2011 WL 2554222, at *4 n.3 (C.D. Cal. June 27, 2011) (quoting Aguirre); see also Teter
12 v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985) (claimant's refusal to undergo surgical treatment
13 is not a sufficient reason to deny benefits where surgery was at most recommended or suggested
14 but not prescribed by a physician).  Indeed, while plaintiff's treating physician referred him for a
15 neurosurgery consultation in June 2006, the ALJ did not point to any evidence that any doctor
16 prescribed surgery as treatment for plaintiff's shoulder and back pain.

17      Next, the ALJ discounted plaintiff's credibility on the ground that plaintiff "has been
18 repeatedly non-compliant with prescribed mental health treatment."  [AR at 30.]  While the ALJ's
19 finding that plaintiff has not been compliant with his mental health treatment may be a clear and
20 convincing reason to reject plaintiff's testimony concerning his asserted mental health problems
21 (see Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)), the ALJ found at step two that
22 "the record discloses no severe medically determinable mental impairment."  [AR at 28.]  Thus,
23 the relevant inquiry for evaluating whether plaintiff is disabled due to his severe combination of the
24 impairments of bilateral shoulder tendinitis, back problems, and foot problems, is whether plaintiff
25 was compliant with his prescribed treatment for *those* problems.  The ALJ did not find that plaintiff

---

[6] Vicodin contains hydrocodone, which is "in a class of medications called opiate (narcotic) analgesics." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html.

was non-compliant with treatment for his shoulder, back, or foot problems. [See AR at 30-31.] Thus, the ALJ's finding that plaintiff was not compliant with his mental health treatment was not a clear and convincing reason to reject plaintiff's testimony concerning his *shoulders, back, and feet*.

Third, the ALJ discounted plaintiff's pain testimony on the ground that a workers' compensation physician, Dr. David L. Wood, opined in March 2007 that plaintiff can perform modified light work, and that the opinions of three non-examining physicians "allow for the performance of sustained sedentary work activity." [AR at 30.] Dr. Wood examined plaintiff on February 14, 2007, and thereafter stated in a report dated March 12, 2007, that "[i]t would ... be appropriate that [plaintiff] return to modified duties of no lifting over 15 pounds and no repetitive work at or above shoulder level if available." [AR at 287-301.] On April 16, 2007, and August 16, 2007, respectively, two non-examining State Agency physicians opined that plaintiff can perform "[s]edentary [work] with no work above or at shoulder level" [AR at 307-13], and the medical expert testified at the hearing before the ALJ that plaintiff can perform modified light work. [SAR at 375.] An ALJ may rely on physician opinions to support his credibility determination for a claimant. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008). Nevertheless, the ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See Reddick, 157 F.3d at 722-23 (It is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore competent evidence in the record in order to justify her conclusion); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (While the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports his conclusions.); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney

1 v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may
2 not ignore evidence that suggests an opposite conclusion.") (citation omitted).  Here, the ALJ
3 relied on the opinions of Dr. Wood and the non-examining physicians to discredit plaintiff, but
4 failed to discuss the opinion of another examining physician that lends support to plaintiff's pain
5 testimony.  On November 29, 2006, Dr. Guy H. Gottschalk, a workers' compensation physician,
6 performed an examination of plaintiff and reviewed his medical records.  [AR at 256-66.]  Based
7 on his examination and review of an MRI of plaintiff's lumbar spine, Dr. Gottschalk opined that
8 plaintiff "has been temporar[il]y totally disabled since December 20, 2005, and ... that he is going
9 to be temporar[il]y totally disabled for six to nine months at least."  [AR at 262.]  In discussing step
10 two of the five-step process, the ALJ acknowledged in his decision that Dr. Gottschalk "anticipated
11 that [plaintiff] would be unable to return to his previous employment for a period of six to nine
12 months" [AR at 27], but he did not discuss this opinion in evaluating whether the medical opinions
13 in the record support plaintiff's pain testimony, or otherwise assign any weight to Dr. Gottschalk's
14 opinion.  The ALJ therefore failed to consider competent evidence in the record and erred by not
15 providing adequate reasons to reject Dr. Gottschalk's opinion in favor of the other physicians'
16 opinions.  See Gallant, 753 F.2d at 1456.

17 Finally, the ALJ discredited plaintiff's pain testimony because he found that the objective
18 medical evidence did not support that testimony in the following ways: while plaintiff asserts that
19 his foot problems contribute to his inability to work, "no medical source has imposed any limitations
20 related to a fungal infection"; Dr. Gottschalk noted in his November 29, 2006, report that "one may
21 have a pathological condition without current or future disability";[7] and "the clinical correlation and
22 positive findings on electromyography are lacking," as "[the medical expert] explained" at the
23 administrative hearing.  [AR at 30, 261; SAR at 374-75.]  While an ALJ may consider whether a
24 lack of objective medical evidence supports the degree of limitation, this "cannot form the sole
25 basis for discounting pain testimony."  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  A

---

[7] In his decision, the ALJ cites Dr. Gottschalk's November 29, 2006, report, but erroneously attributes the statement to Dr. Wood.  [See AR at 30.]

1 claimant need only "produce objective medical evidence of an underlying impairment which could
2 reasonably be expected to produce the pain or other symptoms alleged" (Bunnell, 947 F.2d at 344
3 (internal quotations omitted)), but "need not produce objective medical evidence of the pain or
4 fatigue itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). This
5 approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature
6 of pain and other such symptoms" (id.), such that "[t]he amount of pain caused by a given physical
7 impairment can vary greatly from individual to individual." Id. (internal quotations omitted); see
8 also Burch, 400 F.3d at 681 ("The rationale for this restriction is that pain testimony may establish
9 greater limitations than can medical evidence alone.") (internal citation omitted). Thus, even if
10 substantial evidence supported the ALJ's determination that the medical evidence is inconsistent
11 with plaintiff's testimony concerning the severity of his symptoms, the ALJ would only be able to
12 rely upon this rationale if his other reasons for discounting plaintiff's credibility were proper.
13 However, none of the ALJ's other reasons for discounting plaintiff's credibility are legally
14 adequate.[8]

15 Substantial evidence does not support the ALJ's reasons for discounting plaintiff's
16 credibility. Remand is warranted on this issue.[9]

17 /
18 /
19 /
20 /

---

[8] In addition, the ALJ's second ground for finding that the medical evidence does not support plaintiff's testimony is improper because it relies on one isolated statement in Dr. Gottschalk's November 29, 2006, report, despite the ALJ's implicit rejection of other content in that report without explanation. As discussed supra, Dr. Gottschalk opined in the report that plaintiff "is going to be temporar[il]y totally disabled for six to nine months at least" [AR at 262], but the ALJ did not address that opinion in evaluating plaintiff's credibility. It was improper for the ALJ to rely on Dr. Gottschalk's note that "one may have a pathological condition without current or future disability" [AR at 261] when the ALJ implicitly rejected Dr. Gottschalk's opinion in that same report without providing specific reasons supported by substantial evidence for doing so. See Robinson, 366 F.3d at 1083.

[9] The Court exercises its discretion not to address herein plaintiff's first contention of error.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate plaintiff's credibility.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 25, 2012

/s/ Paul L. Abrams

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

12